The issue here is the Statute 102-G2 which says that a person is entitled to an invention unless another party before their invention made it in this country. And that's really two different requirements, the before and the made in this country. And we contend in this case the commissionary in finding both of those satisfied by the ASAP reference. And I want to turn first to the before part, the priority part. And here... What do we do when there's a range? That's exactly the issue. That's the issue. And I think the issue is that what you do is you default to the two fundamental parts of the statute. Section 282 says the patent owner is entitled to a presumption of validity. This court has consistently and it was reaffirmed recently by the Supreme Court in Marksoff v. IFRI has said the party challenging that validity has a burden to prove validity by clear and convincing evidence. Now in the OCA case, which is what was cited, there was a statement that when the inventor approves a range is entitled to the last date of the range. But in the OCA case, the inventor was the junior party. And in a case where you have a date certain of the senior party, in that case a filing date of October 31, and the junior party had only proven the last week of October, an unusual case, the best they could show was that it was that last week and that overlapped. So they hadn't proven clearly earlier in this case. The finding was that we had a conception of May through August of a certain year and that the ASAP reference was April through May of a certain year. It simply can't be said that they proved clearly and convincingly that they were earlier because they both could have happened in May. And it's a close case, but the OCA case was a close case. And the ultimate underlying principle of OCA was that Yosefa, who proved conception and due diligence in the last week of October, could not be said to have proven to be earlier than an October 31 date because he couldn't clearly get behind it. So your basic proposition is it's a burden of proof problem. The burden's on them. They pay. That's right. And that's right. If you have competing ranges, why not apply the OCA rule to both parties the same way? In other words, you're saying as a matter of proof, the junior party is only entitled to the last day because the junior party can't prove definitively any date other than the last date as a matter of certainty. Why shouldn't that apply to the other party as well? Because this court has been consistent in maritore and as recently as an unposted thing maritore, that the burden of proof and the burden of persuasion always rests with the challenger. The burden of production, once they prove an earlier filing date as they did here, the burden of production turns to us. We have to produce evidence, but we never have the burden of persuasion. It's not like a flip, stack, and forth like a tennis game where they prove a date and we have to prove earlier than they prove a date and we have to prove earlier. We have to come forward with the evidence, but once the evidence is in there, they always have the burden of proving the earlier date. So open rule works where the first date, the senior party has a date certain and you're looking whether the challenger's range is earlier. You can then look at the last date and say did they get earlier. But why does the senior party get the benefit of the beginning of a range when there is no date certain? Because the best evidence available to the parties is that the conception occurred in that range and if it's presumed valid, then the question is that the challenger proved clearly and convincingly that they had an earlier conception. Well, they might be able to prove clearly and convincingly if the date that is credited as the date of conception is the later of the date in the range. Certainly if you just arbitrarily assign them the last date, but you could equally arbitrarily assign them the earlier date. Either one would be arbitrary. It's not arbitrary. There's some logic and reasoning set forth in OCA that would apply the same way. No, because OCA only applied that worst date in the range rule to the junior party, which did make logical sense in OCA, but it doesn't make logical sense to turn it around and apply it to the senior party because the senior party has no burden. That's what I'm trying to understand. Because the senior party has no burden. The patent owner never comes into court with the validity. The presumption of validity doesn't give a presumption of a particular date of conception. No, but it establishes who has the burden to prove invalidity. The patent owner never has the burden to prove validity. They always have the burden to prove invalidity. And when you have a range, they have to prove earlier than the range. Here's the question. If the court sits here today and looks at this evidence, can it or can the commission or anyone else say that the ASAP reference was conceived prior to the AMCOR conception? And one cannot, because based on the findings that existed, they could have both been done in May. And then the question is, what happens? We have an existing issued U.S. patent. They're trying to prove it as invalid. There's only one of two choices. Either they didn't prove it as earlier, or you're going to conclude they did prove it as earlier. And our submission is, when there's a range, they haven't proven clearly and convincingly it was earlier unless they can get behind the range. That's what the presumption says. That's what Microsoft authorized says. That's what we contend is the case here. So when there's a range and it's overlapping, they have another burden. Now, to some extent, it's a moot point in our position, in our view, because they didn't make it in this country in the relevant period we're talking about. The statute talks about made in this country. And it's interesting, because if you read that, it's just a first glance. You would think it needs to be physically here. And in almost all cases, that is what happens. The parties collectively only came up with five cases where there was a foreign invention and there was some activity in the United States other than bringing it physically present where the issue became whether that made it here. The original case, Thomas First Reece 130 years ago, and in 130 years there's only been four cases since that even have addressed anything like this situation, shows it's not a very common situation. In the Thomas case, addressing an allergist requirement like G2, there the party had submitted some information which the court concluded was not sufficient, but had submitted a disclosure for purposes of getting a U.S. patent application, which the court said was sufficient to show it was made in this country. In the Murtza case in 1962 was the next time this was really addressed. And there, they literally showed that a foreign application was submitted and had to be translated and then submitted to the patent office. In those unusual situations, the court has found, in effect, a constructive manufacture in the United States, somewhat analogous to a construction reduction practice with the filing date. But those cases are rare, and they've taken the statute a little further than what the statute says. The statute plainly excludes foreign inventions. As Chisholm says in Section 305, the Congress has been asked several times to take out that made-in-this-country requirement, and it's always declined to do so. Congress has expressed a preference to keep that made-in-this-country provision in. Every one of these cases represents an exception to that being made in this country. Our position here, where the only evidence was oral, not written, of a disclosure during the relevant time frame, is that to accept the Commission's position is to take that too far. If you get to the point to where a foreign inventor can come up with an invention in a foreign country, make a phone call to someone in the United States, and have that suffice as made-in-this-country, you've taken the statute too far beyond what the statute says. You want it to be on paper. You want it to be on paper. That's right. At a minimum. We would suggest that might even be too far, but at a minimum. I agree with you, because I grew up with paper. But almost nothing is on paper. I spend my day looking at this screen with little ones and zeros. It drives me nuts. But that's the world we live in. You can't expect them to send something by mail. No, let me be careful. Not paper. When I say written, I will use the standard of recorded and intangible media, which is the standard used in the copyright statute and also the one commonly used in discovery and litigation today. Something recorded in tangible media. Why is that important? One of the very reasons Chisholm tells you that Congress keeps keeping that requirement in there is because the difficulty of proof as to what was invented in a foreign country and, quite honestly, I think a preference for work being made in this country. Recorded and tangible media. I send an email to you, and you have it on your screen. Is that recorded and tangible media? Yes. By any standard of discovery today, that would be recorded and tangible media as it would be in a copyright situation. So you're saying anything other than a phone call. Yes. An oral phone call is what's not permitted because, essentially, it leaves us so wildly open to proof and so ambiguous that it takes us... The question is, is it made in this country? Have you talked to the NSA lately? I have not. You should talk to them. Any phone call is now recorded. Well, if we could show the NSA recorded, and I don't know if they would tell us, then I might say that's recorded in tangible media as well. I might go that far. But let's say an unrecorded oral conversation is not sufficient. The flip side is, if you allow it to be sufficient, you open up the situation to any phone call between a foreign inventor and someone in the U.S. to be sufficient to prove that something has been made in this country. And also, on your line, you mentioned corroboration as an issue. And, again, you didn't develop the unpublished secret prior art concepts of 102G. You're satisfied with that? I'm not surprised that there isn't very much litigation on that because I thought it was clear. Yes. You had also the corroboration point that, in that phone call, you would also have some person who received a phone call in the United States who is the only person who knows it's been made in the United States. Between those two parties, no one else knows. And no one could know until it's somehow later discovered in litigation. In an electronic world, isn't it really then a question of evidence, fact, determination? I think it's always a matter of evidence. Whether it was transmitted? Yes, I think it's right. It's always a matter of whether it was transmitted in the United States. So, in general, it's a question of fact as to who is believed, isn't it? We would submit that made in this country really means made in this country, physically made in this country, physically present in this country. But we acknowledge that the courts over the years, in very few rare examples, really only three examples, have they bent the rule, if you will, to allow written disclosure in the United States to qualify as being made in this country. And we would question whether that's appropriate, but we don't have to go to that point in this case. What's more important is that an oral disclosure would take it too far. Now, we also have to point that if we take the oral disclosure in this case, there was no oral disclosure sufficient to satisfy the requirements of proving conception. For the idea of conception, proving, there has to be a disclosure sufficient so that the recipient could make and build the invention without undue experimentation to reduce its practice. Here, there were no documents transmitted contemporaneously. The only documents mentioned are two classes, and when you hear counsel from the other parties talk, ask yourself this, when they're talking about a document, is it something transmitted in the U.S., or is it alternatively something referenced in the invention, but only retained in Asia, in the country of invention? We submit that neither of those will show what was communicated in the U.S. Keep in mind here, we have two different issues going on. One is whether it was even conceived in a foreign country, and whether that could be corroborated and so forth, but independently, was that corroboration communicated in the U.S.? And there's no document corroborating or even suggesting communication in the U.S. The oral testimony, when you look at Mr. McClellan's testimony, there are only five types of things he talks about having communications in the U.S. during the relevant year. There were blue sky meetings and some other types of communications he talked about, but not in one single conversation could he identify a date or a detail of what he communicated. He always said he couldn't remember. He never once said, on this date or around this date, I communicated all this information. Never said that. Mr. Collins similarly couldn't remember any date when that occurred. And we submit on that record, you simply can't find that there was an oral communication in the invention sufficient to meet the standard for conception. The last point is that Carson has raised an alternate grounds for supporting the commission's decision related to the Japanese prior art, but all of it rests upon a plain construction which Carson did not urge below. And that's his way of approaching this appeal. Okay. Thank you, Mr. Frank. Mr. Leiberman. Good morning. May it please the Court, Michael Leiberman for the International Faith Commission. Substantial evidence supports the commission's finding that this LPCC invention was disclosed in the United States prior to AMCOR's conception of its invention. And I first will address the points that AMCOR's counsel was making with regard to the conception. We believe that OCA states a clear and practical rule to determine the priority in the priority contest. And the Court specifically referred in OCA to the inventor. This language indicates that the Court referred to both parties in the contest. If you look into the OCA decision itself, in the very same paragraph where the Court gives this rule, the Court also discusses the positions of the parties, like senior party and junior party. So the Court certainly knew how to address and how to formulate the rule to make it clear. And the Court refers to the inventor, meaning that it applies to each party in the priority contest. Importantly, this conclusion was also confirmed by a subsequent case, Doe Chemical, where the Court confirmed that in the context of 102G priority disputes, it was always understood that both parties are inventors. Also, another point, the burden of proof by inconvincing evidence, the party that challenges the existing patent still has this burden and OCA rule doesn't negate this burden. If you have two competing ranges, in other words, both parties are claiming the conception within a certain date range, OCA suggests that for the junior party, that the best date that that junior party is going to be able to rely on is the last date in that range. Correct? We believe that both parties can rely on it. Well, OCA was talking about the junior party. So the question is, well, if the burden is to show by clear and convincing evidence that the junior party's date was before the senior party's date and the senior party has a date range, wouldn't it be reasonable to say that the senior party gets the benefit of the earliest date? In other words, you have to prove the date of conception prior to the first date in that range. Does that make sense? Well, I don't think so, Your Honor, because the OCA decision takes care of the situation. The Court says in the event of a tie, priority must be awarded to the senior party. So that takes care of the burden, the respective burden that the parties carry in this contest. But I'm not talking about a tie. I'm talking about if the junior party's date, the last date in the range of the junior party's range is prior to the first date in the senior party's range, then the junior party wins. That's correct. So the only question is, what happens if the last date in the junior party's range is somewhere in the middle of the range of the senior party? Well, then if you apply the OCA rule, that will give you a clear situation where the junior party proved that its conception predates the conception of the senior party. So you would have both parties tagged with the last date in the range as the best date that they can establish, and then the contest is between those two dates. Yes, and then if both dates are the same, then the tiebreaker rule will apply, because otherwise you expose the junior party to a heightened burden twice. First, you'll be exposed to a heightened burden because we apply this rule only to a junior party. So they get the worst date, the last date, and then the second time you expose the same party to a heightened burden the second time when you apply the tiebreaker rule, and that will be just simply unreasonable, probably to the extent of being unfair. It's already taken care of, the tiebreaker rule. I'm sorry. Here you have an issued patent. Yes. And what's happening to the presumption of validity and the obligation to prove by clear and convincing evidence that there was prior work? How did that get lost in this debate? Well, in this case, the challenging party actually proved that they conceived their invention before import. You say the challenging party, but there's no interference. There's no challenge by this foreign source of the phone call. They're a reluctant participant. So the rules of interference apply as if they had complied with the rules of filing a patent application in the United States, going through the declaration of an interference, the selection of a common count, and all of the rules of corroboration of invention and corroboration and all else that could gain an interference. There's no junior or senior party. Is there a different statute, I assume, that you're relying on? Not the interference statute. Right. What statute is it? It's Section 102G. And under that section, the party that was accused of infringing, Carson, and Carson argued that Amcor's patent is invalid. So they had to prove by clear and convincing evidence that conception of ASAT patent was prior to conception of Amcor's patent. What is the corroboration of this invention date? Well, the corroboration of the invention date is a question of fact and commission. So what are the facts? Well, the fact that there is a substantial independent circumstantial evidence that shows, in addition to direct... Give me some facts. I'm sorry? I said, what facts are you relying on? Well, there are certain documents in the record that shows that this invention was, that ASAT invention was conceived prior to Amcor's invention. Not contemporaneous documents? Contemporaneous documents. A surgeon? Yes. A third person? Yes. Secretly? Unpublished information? Right? I'm sorry, no. It's not published, is it? The disclosure in the United States was not made public, I gather, from the record? Well, it was part of the development program that was in place. Commercial development. I'm sorry? It was a commercial development, I gather, is your position. Yes, but there is abundant documentary evidence that shows that the invention was conceived... Abundant? Yes. For instance? For example, documents that identify the RX 1506, 1512, and I can point to the joint appendix pages for these documents. So, the joint appendix pages 51881... You mean the confidential appendix? Yes. Also, joint appendix... 51881... So, JA Joint Appendix 051881, that's one document. Another document, JA 051900, that's another document. There is a number of documents that actually go after that. I can tell you that, in general, this set of documents starts... It's Volume 4 of the appendix, and the documents start at JA 051849, and they go through page... Through the end of the volume, by the way. So, all these documents, they represent important circumstantial evidence, in addition to direct evidence provided by the inventor and corroborated by independent disinterested parties. And also, the very fact that there was a research and development program conducted as a matter of ordinary business at ASAP, in itself, that's an important factor also that serves to corroborate the disclosure in the United States, and the date of conception prior to Air Force conception. So, you're not telling us these were contemporaneous documents? There are contemporaneous documents that were dated around the time of conception. They were not simultaneous, but they were contemporaneous. They dated the following January. Well, some of them actually even predate the date of conception, showing that the program started before that. You want us to infer that they were made six months earlier, even though they are dated six months later? Well, the program started before the conception. We're looking for clear and convincing evidence that there's a valid patent. These people did not choose to enter into the patent system. They reluctantly, I gather, participated in the investigation, and you're asking us to give them the benefit of what? Well, they're not an interested party here. The party that is trying to prove prior conception by ASAP is not ASAP itself. It's Carson. So, we believe that Carson sustained his burden of proof by clear and convincing evidence. And the range for conception, by the way, of MPOR is not made through August. It's made through December. That was the finding of the judge. So, MPOR simply doesn't talk about this December 10, 1997 finding. That was not, by the way, appealed by MPOR. So, we have to consider that date as the earliest date for MPOR's conception under proper application of the Oak Rule. And, therefore, the commission properly determined that Carson proved by clear and convincing evidence and sustained his burden. Okay. We have three minutes for Mr. Bowler. Do you want to turn it over to him? Yes. Well, I think that Mr. Lieberman went over a bit, but proceed and tell us what you want to tell us. All right. Let me just put Bill Bowler representing the Carson Intervenors. It pleases the court. I'd like to address just quickly a couple of the issues, matters raised about the ASAT prior invention and then talk a little bit about the anticipation of obvious decisions. But, first, on the OCA issue, in cases like in OCA where it was interference and in cases under 102 G2 like we have here, you have two parties who are inventors. They're both inventors. OCA didn't state a rule that was applicable just to the junior party. In fact, the statement in OCA is that when an inventor seeks to establish a date. So they're both inventors. Yeah, but that statement was made in the context of a priority contest involving a junior party and a senior party. That's true, but both parties are inventors in that case, and both parties have to put on proof to establish their earliest date of invention. It's no different under 102 G2 in a noninterference context where you've got two parties who are both claiming to be the first to invent. They are both inventors, and the issue is who is first. But there's a patent involved with a presumption of validity. And the presumption of validity is taken care of in the clear and convincing evidence standard, but it's not necessary for the presumption of validity that you apply different rules for proving invention dates to the inventor who has a patent and to the inventor who is challenging that patent. That's not necessary to adequately address the presumption of validity. In fact, it does an injustice to one of the inventors who might in fact end up being the first true inventor. Let me also say with respect to Olka that in this case, it's not true that Amcor didn't have a burden. Amcor had a burden of going forward, at least with evidence, and this court's decisions in Apotex and Maherkar recognized that in determining whether the party with a burden of going forward or production met that burden, that the court applies the rules that are relevant to determining priority. And Olka is one of those rules. So Olka does apply to a patentee who has been presented with prior art, in Maherkar it was 102A prior art, and then tries to predate that. This court has said that the same rules of priority apply in determining whether they've met their burden. As far as the wasn't made in this country argument goes, it is true that neither Mr. McClellan nor Mr. Combs were able to establish a specific date, but if you look at the totality of the evidence, as you must under the Price v. Simzik case, it shows a period of months of constant communication on a daily, weekly, and monthly basis, specifically about the LPCC invention from the inception of the development program early in the year through the date range when Mr. Combs testified that he had full knowledge in the United States. Now Mr. Combs was based in the United States, and he said they communicated by email, telephone, videoconference, except in the instance where he made a trip to... It shows that it's introduction, and in the Mortzler-Lorella case, the crucial issue is introduction of the invention into the United States, and Stahelin held that that could be accomplished by an oral disclosure. In that case, the inventor had the conception in Switzerland and disclosed it orally to someone in the United States, and the general talking pictures case that we cited shows that even beyond that, introduction includes being in this country with knowledge of the invention gained from the inventor, and that was the case in general talking pictures. The conception was made outside the country at sea on a ship, and the court credited the conception date, introduction into the United States, as the date the person with knowledge of it returned to the United States. Months later than the earliest information showed, the conception occurred at sea. What happens if the inventor takes a ship over and walks around Washington? Does he make... He doesn't disclose it, but he knows it in his head. That would establish conception in the United States. The reason why the concern about a telephone call or something like that is not a valid concern is because we still have the requirement of independent corroboration, and that means that the inventor can't simply walk around with the idea in his head and then say later, he or she, say later, aha, I have the conception on this date, it has to have been disclosed, and that disclosure has to be evidence of independent corroboration of that disclosure. So whether the conception occurs here or occurs outside the United States and is introduced here, corroboration is required, and that takes care of the concern. If I could switch really quickly to, just for real quick, this invalidity argument. We've laid out the reasons why the person of ordinary skill in the art would have read the JP456 and JP964 references differently than the commission did. The commission erred in not crediting the person of ordinary skill in the art with his ordinary creativity and background knowledge and skill. On the claim construction, Carson is not arguing a new claim construction. What Carson is arguing is the commission's claim construction that included the negative limitation that only a tie bar can interrupt the lip and not prevent being fully around, but not any other structure, such as a fused lead of JP456. There's no support in the specification or claims for that. In fact, the experts testified, the specification only refers to connectors 28 generically. The experts testified that both tie bars and fused leads are connectors. Excuse me, you want us to overturn the commission, although the decision was in your favor? We want to overturn the commission's construction as an alternative ground on which this court could find that the finding of no violation is supported. Okay. We completely support the commission on the ASAT issues. The commission got it dead right on the ASAT issues, but we contend as an alternative ground that the commission should have and could have found that these references to a person of ordinary skill... Okay. I'm not sure I understand what you're asking of us, but all right, I think we have the arguments. One last point, Your Honor. You're well over time. Can you talk fast? Yes, I just want to bring to the court's attention one piece of testimony that I apologize. I don't know why it didn't make it into the joint appendix, but I've got to bring it to the court's attention because it relates to the... No, if it's not in the joint appendix, there's no way the other side can respond. Okay. All right, thank you, Your Honor. Thank you, Mr. Miller. Okay. So from then, I guess however much we run over to address the findings, sir. I have only a few points to make in response to that. First of all, what you never heard in the presentation from either counsel was any recitation of testimony from the inventor as to his conversation in the United States, identifying what conversation disclosed or conveyed a description of the ASAT reference sufficient to teach someone in the United States how to make the invention without undue experimentation. That's what's required to establish that someone has conception. They must conceive it in their mind so clearly that it can be reduced to practice without undue experimentation. There was no testimony that any phone call, any meeting occurred where that description was conveyed. There was no testimony from the receiving party, Mr. Combs, that he received such communication. There is only at most testimony that there was inventive activity by Mr. McClellan in Asia and that there was conversations between Mr. McClellan and Mr. Combs as part of his job. Mr. Combs was the marketing person for the corporation, and they had conversations referred to as blue sky meetings and brainstorming meetings, but there is no suggestion as to when during the relevant year anything that was pertinent to the claims of the MCOR patent were conveyed. No discussion was provided of that. The documents they referred to, 051881 and 051900, both were documents that the evidence shows were only in Asia and only referred to or done in Asia. Neither of them show that anything in those documents was ever communicated in the United States, and recall we have two issues here. One is whether there was a conception at any point in time in Asia, but for purposes of 102G2 we have to have evidence that that conception, if it occurred in Asia, was transmitted in the United States, and neither of these documents can evidence that or corroborate that. Now with respect to OCA, again, the only point I'll make is that we never had the burden of proof. We did have at one point in time the burden of production after they proved an earlier date, an earlier filing date, and then we provided that production with a range for conception, which is unusual, but that's what the evidence showed, and they then had the burden to show an earlier range. An earlier range or an earlier date? A date earlier than our range, that's what I should say, a date earlier than our range. You did hear reference to a fallback to the totality of the evidence and the rule of reason that we should consider this corroboration as a whole, but they can't take the rule of reason and look at it as a whole, which this court has said, and then take a bunch of evidence, none of which individually shows elements X, Y, or Z, that are present in AMCOR claims, and have them collectively show elements X, Y, and Z. If you have one piece that shows X and one piece that shows Y and another piece that shows Z, it may make sense under the rule of reason to say that that corroborates some disclosure, but they didn't have it here. Nothing they showed, they showed X, Y, or Z, and they can't add them all up and get rid of some of the parts. Finally, their reference to Skahalen, and I say finally, I do want to mention the Japanese reference briefly, this is Skahalen in general talking pictures. You did hear reference to a fallback to the totality of the evidence and the rule of reason that we should consider this corroboration as a whole, but they can't take the rule of reason and corroborate and look at it as a whole, which this court has said, and then take a bunch of evidence, none of which individually shows elements X, Y, or Z,  but they can't take a bunch of evidence, none of which individually shows elements X, Y, or Z, and then look at it as a whole, which this court has said,  Mr. Holland, the oil disclosure was followed by a written letter, and the court specifically mentioned that. In General Talking Pictures, the actual record of invention was a napkin between the patent attorney and his inventor, written on the ship. I meant to find out if that ship was a U.S. registered ship, it needs to have been made in the U.S., but I didn't get a chance to find that. But the point is, it was a written record from the get-go. It was a napkin in which they wrote the mission here. The last point I do want to mention, is on the claim construction issue with respect to the Japanese prior art. Carson here is essentially trying to rewrite history. What they argued before the commission, was that when the claim talked about the lift going around the diapad, pulling around the diapad... I'm not sure if that's because... Okay. My only position there would be that they're relying on new construction. That's what they're looking for. Before you sit down, Mr. Cohen, just so I'm clear, I understand what's going on. The ALJ came out with one answer on the validity thing, and the commission came out with a different answer. What are the practical consequences of which answer is the right one? That is, why does anybody care? Ultimately, you're arguing the decision of the commission. Yeah, I understand that. But what happens to the investigation is what I'm really asking. If what? If we go with the ALJ or if we go with the commission. They came out with different responses as to whether they were prior art or not. There were two things you're talking about. There's the ASAP reference and the OCA issue. The ALJ found the way we think is correct, that it didn't. They hadn't shown an earlier date. The commission reversed. I understand. And on that, if you reverse the commission, essentially you would be agreeing with the ALJ's position. And in fact, one of the commissioners... So what? That would then mean that you would reverse the finding that the ASAP reference satisfied 102.2 and reverse the finding that the patent is invalid. And so what? You would demand for proceedings consistent with that, which would mean that they were found to be fringe, the patent is valid, and therefore we would proceed in the IPC with seeking exclusion order and the things that follow from the finding. The investigation would proceed. Correct. What would happen is you would have any commission... The commission would direct the ALJ for hearings on the scope of the exclusion order that would follow, and then that would go back to the commission as it normally does. Essentially, universal of the commission would mean that we approve an infringement, and the exclusion order follows. They would go through the process. Actually, I should have said that, but you're a little more careful. They would then issue a ruling consistent with your order to make the finding consistent with your decision, and then there's that 60-day period where the president has the ability to stop exclusion from going into effect. All those proceedings would occur. You would demand for them to enter an order consistent with this opinion. That's what would happen. As I understand it, and I'll ask the commission as well, the commission can either adopt the ALJ's position on issues that the commission chooses not to review or not adopt it. If they're not adopted, what happens? The commission can reverse the judge. Please come to the recording. That's the question I've always wanted the answer to. The commission can essentially reverse the judge. The commission can modify the judge's determination. You would hear them in silence, wouldn't you? I'm sorry? You would hear the commission for the issues that the commission didn't choose to review. The judge's determination stands. If the commission chooses, yes. Okay. It's adopted. It's adopted. It's adopted in silence. Yes, by not reviewing the judge's determination. Okay. Thank you. Anything else urgently we need to know? No. Probably. All right. Thank you all. Thank you, Mr. Brennan and Mr. Lieberman. Mr. Bilodeau, the case is taken under submission.